**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____ :
DANIEL CATALANO,                                                 :
                                                                               :
                              Plaintiff,          :          Civil Action No. 18-11646 (FLW) (DEA)
                                                                               :
            v.                                               :
                                                                               :                    **OPINION**
CITY OF TRENTON, MICHAEL               :
PALINCZAR, PROSECUTOR WILSON,   :
MARC McKITHEN, PARKING OFFICER :
OLIVER, DISPATCHER JACKSON,           :
OFFICER CRUZ, EUNICE LEWIS, and     :
SGT. HARRIS,                                               :
                                                                               :
                              Defendants.        :
_____ :

**WOLFSON, Chief United States District Judge:**

Pending before the Court is a motion to dismiss or, in the alternative, for summary

judgment, filed by Defendants the City of Trenton; Officer Michael Palinczar; Municipal

Prosecutor Wilson; Municipal Court Judge Marc McKithen; Parking Officer Oliver; Police

Sergeant Harris; Police Officer Cruz; Police Dispatcher Jackson; and a court staff member

named Eunice Lewis (collectively, "Defendants"). *Pro se* Plaintiff Daniel Catalano ("Plaintiff")

brought this suit against Defendants, alleging that they violated certain of his Constitutional

rights when he was detained and charged with a disorderly conduct offense after attempting to

file a citizen's complaint against various officials involved in a parking ticket hearing at

municipal court.

Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC") on various

grounds, including that the claims against Judge Mckithen and Prosecutor Wilson, respectively,

are barred by judicial and prosecutorial immunity, that Plaintiff has failed to state a claim, and that, in the alternative, qualified immunity bars all of Plaintiff's claims.

For the following reasons, Defendants' motion is granted, in part, and denied, in part. In sum, all of Plaintiff's claims are dismissed, except for Plaintiff's First Amendment retaliation claim and Fourth Amendment false arrest/false imprisonment claims against Officer Palinczar.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 11, 2018, Plaintiff, a resident of Ewing, New Jersey, appeared for a hearing at the Trenton Municipal Court to contest the two parking tickets that he had recently received. FAC at ¶¶ 1-2. While the FAC contains allegations related to the merits of the parking ticket dispute, those facts are generally not relevant to Plaintiff's claims.[1]  Plaintiff alleges that, at the hearing, Judge McKithen refused to hear certain of Plaintiff's arguments, including barring Plaintiff from giving a closing argument, and that Prosecutor Wilson allegedly "suborned perjury," by attempting to "cover[ ] up" a witness's—Officer Oliver—inaccurate testimony.  *Id.*

---

[1] To the extent that any of Plaintiff's claims can be construed to challenge the outcome of the parking ticket hearing, these are barred by the *Rooker-Feldman* doctrine, which divests federal courts of jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006) (internal citations omitted); *see Douris v. New Jersey*, 500 F. App'x 98, 99 n.2 (3d Cir. 2012) (noting that *Rooker-Feldman* would bar plaintiff's attempt to appeal guilty finding for a traffic violation). The doctrine occupies "narrow ground*." Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291. However, to the extent that Defendants argue that the entire suit should be dismissed due to *Rooker-Feldman*, such an argument is misplaced, as Plaintiff alleges that Defendants violated his constitutional rights by, *inter alia*, falsely arresting him when he attempted to file a citizen's complaint. Though perhaps *related* to the state court proceeding, Plaintiff's claims based on these allegations are not attempts to relitigate the municipal court parking ticket judgment, and are not barred by *Rooker-Feldman*.

at ¶¶ 3-12. Ultimately, Plaintiff was found to have violated a parking ordinance, and ordered to pay a $65.00 fine. *Id.* at ¶ 13.

The following day, Plaintiff went to the Trenton Police Station to pay the fine and also to file a citizen's complaint against several officials involved in the parking ticket hearing, including Judge McKithen, Prosecutor Wilson, and Officer Oliver. *Id.* at ¶ 13. According to Plaintiff, the court clerk, Lewis, began to provide Plaintiff with the necessary paperwork, but "then when she realized [Plaintiff] was filing charges against a co-worker [she] refused to provide [him] with the paperwork." *Id.* at ¶ 14. At this point, Plaintiff began recording the exchange on his camera. *Id.* at ¶ 15. Lewis allegedly then told Plaintiff that recording was not permitted, but apparently backed off when Plaintiff refused to stop. *Id.* at ¶ 16.

Soon after, Officer Palinczar, who had allegedly been present at Plaintiff's parking ticket hearing the day before, arrived and told Plaintiff that he was "wasting the courts [sic] time over $65.00." *Id.* at ¶¶ 18-19. Officer Palinczar then allegedly left to "run [Plaintiff's] name through [the National Crime Information Center, or NCIC]…hop[ing] a warrant would pop up in NCIC." *Id.* at ¶ 21. Minutes later, Plaintiff alleges that Officer Palinczar returned, yelling that there was an outstanding warrant against Plaintiff for violating parole, and ordered that Plaintiff be handcuffed. *Id.* at ¶ 23. After Plaintiff was handcuffed and had his phone taken, Officer Palinczar allegedly took Plaintiff to a back room, where he "mocked [Plaintiff] about how stupid he is." *Id.* at ¶ 24. However, while waiting in the back room, Plaintiff allegedly overheard that there had been "a mistake" and, in fact, no warrant existed against Plaintiff. *Id.* at ¶ 25. Officer Palinczar then allegedly placed Plaintiff into a cell and handcuffed Plaintiff to a bench while he discussed with other officers (it is unclear who the other officers are) how to charge Plaintiff. *Id.* at ¶ 26. Officer Palinczar returned and handed Plaintiff a ticket for "improper behavior," but, according

to Plaintiff, would not explain to Plaintiff the basis for the charge. *Id.* at ¶ 26. After being given the ticket, Plaintiff was released, and he attempted to return to the clerk's window to both pay his $65.00 fine and get the paperwork to file a citizen's complaint; however, Officer Palinczar allegedly forced him to leave the police station without being able to pay the fine or file a complaint. *Id.* at ¶ 33.

Plaintiff brought suit on July 16, 2018, alleging that Defendants violated his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, as well as separately asserting claims for false imprisonment, false arrest, malicious prosecution, and "criminal conspiracy to cover up wrongs by T.P.D." Complaint at p. 4. On September 11, 2018, Plaintiff filed the FAC, this time naming all the present defendants and asserting the same claims. On October 26, 2018, Defendants filed the present motion.

## II.  LEGAL STANDARD

Defendants move for dismissal under Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment. In relation to their summary judgment motion, Defendants have included only one exhibit: the FAC in this case. Thus, "because the documents submitted in connection with Defendants' motions are pleadings prepared by Plaintiff and other judicial documents well within the scope of Plaintiff's Amended Complaint, the Court need not convert Defendants' motions into motions for summary judgment and will, instead, consider these motions pursuant to Fed.R.Civ.P. 12(b)(6)." *Great W. Min. & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 760 (D.N.J. 2012), *aff'd*, 533 F. App'x 132 (3d Cir. 2013).

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in

the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations

omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

Additionally, it is well recognized that the pleading standards required by *pro se* plaintiffs in a complaint are less stringent than the formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 596 (1972). Therefore, "[c]ourts are to construe complaints so "as to do substantial justice," Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally. *Alston v. Parker*, 363 F. 3d 229, 234 (3d Cir. 2004) (quoting *Dluhos v. Strasberg*, 321 F. 3d 365,369 (3d Cir. 2003)).

## III. <u>DISCUSSION</u>

Defendants move to dismiss on the following grounds: 1) judicial immunity as to Judge McKithen, 2) prosecutorial immunity as to Prosecutor Wilson; 3) failure to state a claim as to all of Plaintiff's constitutional claims; and 4) qualified immunity.[2] I will address each of these arguments in turn.

### A. Judicial Immunity

Defendants argue that Plaintiffs' claims against Judge McKithen should be dismissed due to judicial immunity. "The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts*." Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9

---

[2] Defendants also argue for dismissal under the *Rooker-Feldman* doctrine. However, as discussed *supra*, the doctrine does not bar Plaintiff's claims in relation to the events that occurred after the parking ticket hearing.

(1991)). Following the Supreme Court's guidance, the lower courts "must engage in a two-part inquiry to determine whether judicial immunity is applicable." *Ibid*. "'First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.'" *Id.* at 768 (quoting *Mireles*, 502 U.S. at 11). "'Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Id.* "With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Id.* at 768–69 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The courts must "'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* at 769 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988).

"With respect to the second inquiry, [courts] must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection" *Id.* at 769 (citing *Stump*, 435 U.S. at 356 n. 6). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356–57).

Here, because Plaintiff's allegations against Judge McKithen relate to the manner in which the trial of Plaintiff's parking violation was conducted, they are barred by judicial immunity. Indeed, Plaintiff's central complaint against Judge McKithen is that the Judge allegedly did not allow closing arguments, which directly relates to judicial acts, not taken in the

complete absence of all jurisdiction. *See Fake v. City of Philadelphia*, 704 F. App'x 214, 217 (3d Cir. 2017). Thus, Judge McKithen has absolute judicial immunity in this action, and Plaintiff's claims against him are, therefore, dismissed.

## B. Prosecutorial Immunity

Defendants assert that Prosecutor Wilson is absolutely immune from suit based on his or her role as a prosecutor. "[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Here, Plaintiff alleges that Prosecutor Wilson "refused to honor [Plaintiff's] discovery request, and makes vague allegations regarding Wilson allegedly "suborn[ing] perjury" and hiding evidence during the parking ticket hearing. These allegations alone, however, do not provide the Court any reason to suspect that Wilson was acting in any other capacity than in his or her role as prosecutor. These alleged acts were undertaken by Wilson in the course of prosecuting Plaintiff and in the role of an advocate for the municipality. Even allegations that Wilson presented perjured testimony do not help Plaintiff, as "[p]rosecutorial immunity attaches to even knowing presentation of perjured testimony or pursuit of unfounded charges." *Cresci v. Gyess*, No. 17-2342, 2018 WL 4961466, at *5 (D.N.J. Oct. 15, 2018). Wilson is, therefore, entitled to absolute immunity from the claims raised in the FAC.[3]

---

[3] Although Defendants do not raise the argument, Officer Oliver is also immune from any claim that he perjured himself during Plaintiff's parking ticket hearing. The common law has historically "provided absolute immunity from subsequent damages liability for all persons—

### C. Failure to State a Claim: Constitutional Claims Under § 1983

Defendants also argue that all of Plaintiff's constitutional claims are deficiently pled under Rule 12(b)(6). As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Further, Plaintiff must establish which rights or privileges have been infringed upon by defendants' actions. *Albright v. Oliver,* 510 U.S. 266, 271 (1994); *see also Gottlieb ex rel.*

---

governmental or otherwise—who were integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983). Such immunity extends to police officers who testify as witnesses at trial. *Id.* ("Nothing in the language of [§ 1983] suggests that such a witness belongs in a narrow, special category lacking protection against damages suits."); *see also Franks v. Temple Univ.*, 514 Fed.Appx. 117, 122 (3d Cir. 2013) (holding that "a witness, including a police officer, has absolute immunity with respect to any claim based on the witness' testimony"); *Webster v. Wojtowicz*, No. 13-1171, 2017 WL 3718163, at *9 (D.N.J. Aug. 29, 2017) (same). Thus, all claims against Officer Oliver that relate to his role as a witness at the hearing are dismissed.

*Calabria v. Laurel Highlands Sch. Dist.,* 272 F.3d 168, 171 (3d Cir. 2001). Here, Plaintiff asserts

violations of his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights.[4]

       1.  <u>Fourth Amendment</u>

Plaintiff brings claims against Defendants under the Fourth Amendment, seemingly for

false arrest and false imprisonment. Specifically, construing the facts favorably for the *pro se*

Plaintiff, he seems to assert that his two arrests or detentions—first, after the Officers mistakenly

uncovered a warrant against him, and, second, the subsequent charge for improper behavior—

violated the Fourth Amendment. "The Fourth Amendment protects '[t]he right of the people to

be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures.'" *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (quoting *United States v. Watson*, 423

U.S. 411, 417–424 (1976)). "A person is seized for Fourth Amendment purposes only if he is

detained by means intentionally applied to terminate his freedom of movement. A seizure occurs

even when an unintended person is the object of detention so long as the means of detention are

intentionally applied to that person." *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir.

2000) (citing *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596 (1989)). In that regard, the Fourth

Amendment also prohibits arrests without probable cause. *Id.* Furthermore, where an officer

lacks probable cause to effectuate an arrest, a plaintiff also has a separate claim under § 1983 for

false imprisonment based on his or her detention pursuant to that arrest. *Adams v. Selhorst*, 449

Fed.Appx. 198, 201 (3d Cir. 2011).

To state a claim for false arrest, a plaintiff must establish: "(1) that there was an arrest;

and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700

---

[4] In his brief, Plaintiff does not address his claims for violations of the Eighth and Ninth
Amendments, and none of Plaintiff's allegations relate to, let alone support, any rights secured
by these Amendments. Thus, these claims are dismissed.

F.3d 675, 680 (3d Cir. 2012); *see Pollock v. City of Philadelphia*, 403 Fed. Appx. 664, 669 (3d

Cir. 2010); *O'Connor v. City of Philadelphia*, 233 Fed. Appx. 161, 164 (3d Cir. 2007). Here,

there is no doubt that an arrest occurred when Plaintiff "was placed in handcuffs at the scene."

*Estevez v. City of Philadelphia*, No. 06-3168, 2007 WL 707358, at *4 (E.D. Pa. Mar. 2, 2007).

Thus, the inquiry is centered on whether Officer Palinczar had probable cause to effectuate an

arrest. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from

the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at

153; *see United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) ("Probable cause exists

whenever reasonably trustworthy information or circumstances within a police officer's

knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense

has been committed by the person being arrested."). The Third Circuit has explained that courts

must apply a "common sense approach" and that a determination as to probable cause must be

based on "the totality of the circumstances." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir.

2000). Stated differently, "a defendant officer violates an individual's Fourth Amendment right

to be free from false arrest if it was not objectively reasonable for the officer to believe that

probable cause existed at the time of the arrest." *Noble v. City of Camden*, 112 F. Supp. 3d 208,

230 (D.N.J. 2015).

　　　　Here, Plaintiff contends that Officer Palinczar acted without probable cause in, first,

handcuffing him in connection with the alleged outstanding warrant, and, second, in handcuffing

Plaintiff to a bench and charging him with improper behavior. As to the first incident of arrest,

Plaintiff has failed to allege that Officer Palinczar lacked probable cause to initially detain

Plaintiff. Plaintiff avers that Officer Palinczar mistakenly uncovered an outstanding parole

warrant against Plaintiff, and there is no allegation that Officer Palinzcar was untruthful about

whether the warrant existed or that there were other circumstances that made reliance on the existence of the warrant unreasonable. Instead, Plaintiff expressly acknowledges that Officer Palinczar learned that he had been mistaken about the existence of the warrant only *after* Plaintiff had been initially handcuffed. Because the Third Circuit has "generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant," Plaintiff has failed to allege that Officer Palinczar acted without probable cause in arresting Plaintiff in connection with the mistaken warrant. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000) (citing *Rogers v. Powell*, 120 F.3d 446, 456 (3d Cir. 1997) (concluding that a state trooper who was inaccurately told by another trooper that there was a warrant for the plaintiff's arrest was immune from suit)).[5]

However, at this stage, Plaintiff's claim that Officer Palinczar acted without probable cause in arresting Plaintiff for "improper behavior" stands on different footing. The New Jersey disorderly conduct statute provides, in pertinent part,

> a. Improper behavior. A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he
> (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or
> (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the act

---

[5] The FAC, in its section identifying the defendants, does state that Dispatcher Jackson, "did either knowingly give false information to Officer Palinczar or conspired to lie about a warrant that was never in NCIC." FAC at p. 25. This, however, is the only mention of Jackson in the FAC, making it impossible to identify Jackson's precise role in obtaining the warrant. Indeed, the FAC seems to allege that Officer Palinczar asked someone to check whether there were any outstanding warrants, but it is unclear whether Jackson is this person. Although I am mindful that Plaintiff is proceeding *pro* se, without clear and consistent allegations regarding Jackson's role in obtaining the warrant, any claims against Jackson must also be dismissed without prejudice.

N.J. Stat. Ann. § 2C:33-2.[6] Plaintiff alleges that he entered the police station simply seeking to pay the fine and file a citizen's complaint, and that he "never made a sound, moved or said anything," and only "politely told them there was no warrant." FAC at ¶ 23.[7] The most aggressive behavior alleged in the FAC is that, *"at times [the Plaintiff] disputed the assertion he could not file a citizens complaint." Id.* at ¶ 32. However, there is no allegation that Plaintiff engaged in any sort of "threatening," "violent," or "tumultuous" behavior. Nor is there any basis to infer that Plaintiff created "a hazardous or physically dangerous condition." Rather, Plaintiff has pled that he acted respectfully while at the police station, and that Officer Palinczar invented the charge of improper behavior after learning that no warrant against Plaintiff existed. Allegations regarding this type of pretextual arrest are sufficient to state a claim for false arrest because no probable cause allegedly existed. In addition, to the extent that Plaintiff was handcuffed to the bench in a prison cell in connection with this charge, he has also stated a claim for false imprisonment.

Thus, because Plaintiff has sufficiently alleged that Officer Palinczar acted without probable cause in arresting and detaining Plaintiff for improper behavior, Plaintiff has stated a claim for false arrest and false imprisonment against Officer Palinczar.[8]

---

[6] Defendants contend that the FAC does not specify whether Plaintiff was charged as a disorderly person under N.J.S.A. 2C:33-2 or under N.J.S.A. 2C:29-l. However, Plaintiff clearly alleges that he was arrested for "improper behavior," and only N.J.S.A. 2C:33-2 contains these words. Thus, the Court assumes that Plaintiff was charged under N.J.S.A. 2C:33-2.

[7] Under *Heck v. Humphrey,* 512 U.S. 477 (1994), a plaintiff generally cannot maintain a § 1983 action unless the "'termination of the prior criminal proceeding [was resolved] in favor of the accused.'" *Gilles v. Davis,* 427 F.3d 197, 210 (3d Cir. 2005) (quoting *Heck*, 512 U.S. at 485). However, there is no indication as to how the improper behavior charge against Plaintiff was resolved, and Defendants do not raise a *Heck* argument.

[8] To the extent that Plaintiff raises a claim for malicious prosecution, Plaintiff has failed to allege the required elements of this Constitutional tort. *See Estate of Smith v. Marasco*, 318 F.3d 497,

2. <u>First Amendment Retaliation</u>

Plaintiff has also stated a claim for First Amendment retaliation against Officer Palinczar. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (citations and quotations omitted). To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, "the plaintiff usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, Plaintiff engaged in protected activity when he sought to file a citizen's complaint. *See McCann v. Winslow Twp.*, No. 06-3189, 2007 WL 4556964, at *5 (D.N.J. Dec. 20, 2007), *aff'd*, 299 F. App'x 149 (3d Cir. 2008) (noting that "the citizen's complaints constitute activity protected by the First Amendment"). Plaintiff's initial detention cannot constitute retaliatory

---

521 (3d. Cir. 2003) (noting that to prevail in a § 1983 malicious prosecution action, a plaintiff must show that: (1) the Defendant *initiated* a criminal proceeding; (2) the criminal proceeding ended in plaintiffs favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding).

action, because, as already discussed, Plaintiff has not alleged that Officer Palinczar acted without probable cause in effectuating that arrest. *See Nieves v. Bartlett,* No. 17-1174, 2019 WL 2257157, at *6 (U.S. May 28, 2019) (holding that "the plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest").[9] However, allegedly charging Plaintiff for improper behavior and handcuffing him to the bench without probable cause clearly constitutes retaliatory conduct "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *See McKee*, 436 F.3d at 170; *Sershen v. Cholish*, No. 07-1011, 2007 WL 3146357, at *8 (M.D. Pa. Oct. 26, 2007) (noting that "an arrest is more than *de minimus*" and sufficient to rise to the level of retaliatory conduct). Moreover, Plaintiff has alleged a causal connection existed, based both on Officer Palinczar's pattern of antagonism (*e.g.* repeatedly calling Plaintiff "stupid") and the close temporal proximity between Plaintiff's attempt to file the citizen's complaint and the arrest.

Thus, Plaintiff has sufficiently alleged a First Amendment retaliation claim against Officer Palinczar.[10]

---

[9] In *Nieves*, the Supreme Court recently announced the rule that a plaintiff must sufficiently allege a lack of probable cause in order for a retaliatory arrest claim to survive a motion to dismiss. While the *Nieves* ruling impacts Plaintiff's first retaliatory arrest claim, where Plaintiff has failed to plead that Officer Palinczar lacked probable cause, it does not impact his second claim, where the lack of probable cause is sufficiently pled.

[10] Plaintiff also names as Defendants Officer Cruz, Sgt. Harris, and Lewis. With regard to Officer Cruz—the officer who allegedly initially handcuffed Plaintiff at the direction of Officer Palinczar—Plaintiff merely alleges that he "engaged in minor conversation with Officer Cruz" and that Cruz was "simply attempting to defuse the situation;" and concedes that Officer Cruz "is entitled to qualified immunity for [handcuffing Plaintff]." FAC at ¶ 25. Thus, any claims against Cruz are dismissed. As to Sgt. Harris, the FAC mentions that this was the person who refused to speak with Plaintiff when Plaintiff demanded to speak with a Sergeant, and alludes to involvement in a conspiracy. These allegations are too vague and conclusory to survive a motion to dismiss. Finally, as to Lewis, Plaintiff alleges that Lewis denied Plaintiff paperwork, and generally acted aggressively. It is unclear precisely what claims Plaintiff is asserting against Lewis; in any event, Lewis, being a court employee, is protected by quasi-judicial immunity. *See*

3. <u>Fifth Amendment/Fourteenth Amendment—Due Process</u>

Plaintiff also alleges that Defendants violated his Fifth Amendment due process rights in connection with Officer Palinczar's actions in twice arresting Plaintiff. The Due Process Clause of the Fifth Amendment applies only to the federal government and does not apply directly to the States, and, thus, "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action…." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983). Accordingly, the rights provided by the Fifth Amendment do not apply to the actions of state officials. *Leventry v. Watts*, No. 06–193, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors.").

To the extent that Plaintiff intends to assert a Fourteenth Amendment due process claim, such a claim is barred by the "explicit textual source rule." In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process [through the Fourteenth Amendment], must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Berg*, 219 F.3d at 268 ("[W]hen government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate.").

Here, the Fourth Amendment provides the source of constitutional protection for Plaintiff's false arrest and false imprisonment claims. *See Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013) ("A fourth Amendment seizure occurs when someone is detained by means intentionally applied to terminate his freedom of movement.") (internal quotation marks

---

*Washam v. Stesis*, 321 Fed. Appx. 104, 106 (3d Cir. 2009) ("[J]udicial or quasi-judicial immunity…applies to court staff acting in their official capacities").

omitted). The due process clause of the Fourteenth Amendment is, therefore, not an appropriate source for false arrest or false imprisonment claims. *See Ulitchney v. Ruzicki*, 412 F. App'x 447, 452 n. 7 (3d Cir. 2011) (noting that the plaintiff's unlawful seizure claim is more properly analyzed under the Fourth Amendment, and not the Fourteenth Amendment); *Graham Moyer v. Borough of N. Wales,* No. 00–1092, 2000 WL 1665132 (E.D.Pa. Nov. 7, 2000) ("Substantive due process does not support a claim for malicious prosecution or false arrest."). Thus, Plaintiff's due process claims, whether under the Fifth or Fourteenth Amendment, are dismissed.

4. Fourteenth Amendment—Equal Protection

Plaintiff also asserts that his Fourteenth Amendment right to equal protection was violated. The Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Andrews v. Philadelphia,* 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Batson v. Kentucky,* 476 U.S. 79, 93 (1986)). Because Plaintiff has not alleged that he is part of a protected class, the Court will assume that he is attempting to proceed under a "class of one" theory. A plaintiff may proceed as a "class of one" by alleging that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Marcavage v. Nat'l Park Serv.,* 666 F.3d 856, 860 (3d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)); *see also McGuire v. Nw. Area Sch. Dist.,* No. 3:11–CV–1022, 2012 WL 1144652, at *3 (M.D.Pa. Apr.5, 2012). Here, Plaintiff conclusorily argues that Officer Palinczar did not arrest other people that committed improper behavior, and vaguely alludes to an incident involving Officer Palinczar and the stepson of a councilwomen. However, in that incident, Plaintiff asserts that Officer Palinczar engaged in "identical" behavior to his alleged actions here, so, by Plaintiff's own admission,

Officer Palinczar did not treat Plaintiff differently from the stepson in that case. Thus, Plaintiff has failed to allege that he was intentionally treated differently from others similarly situated. Accordingly, Plaintiff's Section 1983 claim under the Fourteenth Amendment's equal protection clause is dismissed.

5.  Claims Against City of Trenton

Plaintiffs' § 1983 claims against the City of Trenton are also dismissed. Section 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Padilla v. Twp. of Cherry Hill*, 110 Fed.Appx. 272, 278 (3d Cir. 2004) (citation omitted). Municipalities are legal entities amenable to suit for their unconstitutional policies or customs. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). To recover against a municipality, a plaintiff must "demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort." *Hansell v. City of Atlantic City*, 152 F.Supp.2d 589, 609 (D.N.J. 2001). A municipality may also be liable if an employee acts unconstitutionally and the municipality failed to adequately train or supervise that employee. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).

In the present matter, the FAC makes general, conclusory, and unsupported allegations about the City of Trenton being the subject of lawsuits regarding police coverups. Beyond these conclusory allegations, however, Plaintiff does not proffer evidence "specify[ing] what exactly that custom or policy was," *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009), a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007)

(internal quotations omitted), or "identify specific deficiencies in any training program to which Defendants might have responded." *Ianuale v. Borough of Keyport*, No. 16-9147, 2017 WL 3503332, at *3 (D.N.J. Aug. 16, 2017).[11]  Therefore, all claims against the City of Trenton are dismissed.

### D.  Qualified Immunity

Having determined that Plaintiff has stated a claim against Officer Palinczar, I must also deal with Officer Palinczar's assertion of qualified immunity. Although qualified immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face. Thus, qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (quotations and citations omitted). In order to determine whether a defendant is entitled to qualified immunity, a court must first "decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and also "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (holding that courts should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity

---

[11] Plaintiff also references a "conspiracy" in the FAC. To extent that Plaintiff asserts a cause of action for conspiracy, it is dismissed. To demonstrate conspiracy under Section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of her constitutional rights under the color or law." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993). Critically, a plaintiff must allege that there is "a meeting of the minds" to violate a plaintiff's rights. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (internal quotation marks and citation omitted); *see Estate of Martin v. U.S. Marshals Serv. Agents*, 649 Fed. Appx. 239, 244 (3d Cir. 2016). In order to satisfy this requirement, "[a] plaintiff must rely on more than his or her own suspicion and speculation...." *Estate of Martin*, 649 Fed. Appx. at 244. Here, Plaintiff has failed to point to any facts as to which officers, if any, entered into a "meeting of the minds." In fact, Plaintiff does not even advance any suspicion or speculation as to how the Officers conspired to violate his rights. Plaintiff's conspiracy claim is dismissed.

analysis should be addressed first in light of the circumstances in the particular case at hand.") (citations omitted). To determine whether the constitutional right was "clearly established" at the time of the misconduct, "it is not necessary that there have been a previous precedent directly in point." *Good v. Dauphin Cty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Id.* The Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n. 3 (3d Cir. 2009); *see also, e.g., Mitchell v. Twp. of Willingboro*, 913 F.Supp.2d 62, 67 (D.N.J. 2012).

The Court has already determined that Plaintiff has alleged facts sufficient to state a claim for false arrest/imprisonment in violation of the Fourth Amendment, and for retaliation in violation of the First Amendment, satisfying the first prong of the qualified immunity analysis. *See Jones v. Walsh*, No. 15-2629, 2018 WL 1203472, at *4 (D.N.J. Mar. 8, 2018) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) ("Because the first step of a qualified-immunity analysis is to examine whether the plaintiff has sufficiently alleged that the defendant violated a constitutional or statutory right, that question overlaps with the issue of whether the plaintiff has stated a claim under § 1983."). As to the second prong, there is no doubt that effectuating an arrest without probable cause, and arresting an individual for exercising his first amendment rights to file a citizen's complaint are violations of clearly established rights, and, thus, "the illegality of the [Officer Palinczar's] actions was sufficiently clear that [he] can fairly be said to have been on

notice of the impropriety of [his] actions." *McGreevy v. Stroup*, 413 F.3d 359, 366-67 (3d Cir. 2005) (internal quotation marks omitted).

Thus, qualified immunity does not shield Officer Palinczar from suit at this stage of the litigation.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion is granted, in part, and denied, in part. In sum, all of Plaintiff's claims against Defendants are dismissed, except for Plaintiff's First Amendment retaliation claim and Fourth Amendment false arrest and false imprisonment claims against Officer Palinczar.

Dated: May 31, 2019                                 /s/ Freda L. Wolfson
                                                    Hon. Freda L. Wolfson
                                                    Chief United States District Judge